# UNITED STATES DISTRICT COURT

FILED

### for the

### Eastern District of California

DEC 1 7 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of Information associated with emails: heidiphong@gmail.com; tchpteam@gmail.com; and bellehpteam@gmail com that are stored at the premises owned, maintained, controlled or operated by GOOGLE, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

2: 1 8 - SW - 1 1 8 9    KJN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

SEALED

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), 846 | Conspiracy and Manufacture of Marijuana |
| 18 U.S.C. §§ 1956(a)(2)(A) and (h) | Money Laundering |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lisa L. Ulrikson, Special Agent, IRS-CI

Sworn to before me and signed in my presence.

Date: Dec 17, 2018

_____
*Judge's signature*

City and state:   Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lisa S. Ulrikson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by GOOGLE Inc., an email and internet services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require GOOGLE Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the United States Department of Treasury, Internal Revenue Service, Criminal Investigation (IRS-CI), and have been since June 7, 2000.

3. I have been employed as a Special Agent with IRS-CI for approximately eighteen years. In the course of my employment, I have conducted or been involved in over fifty investigations of alleged criminal violations, which have included: income tax evasion (Title 26, U.S.C. Section 7201); subscribing to false income tax returns (Title 26 U.S.C. Section 7206(1)); money laundering (Title 18 U.S.C. Sections 1956 and 1957); structuring cash transactions (Title 31 U.S.C. Section 5324(3)); mail fraud (Title 18 U.S.C. Section 1341); distribution of controlled substances (Title 21 U.S C. Section 841(a)(1)); wire fraud (Title 18 U.S.C. Section 1343); conspiracy (Title 18 U.S.C. Sections 371 and 1349) and forfeiture (Title 18 U.S.C. Section 981). Most of these investigations focused on individuals deriving income from illegal sources (narcotics or fraud).

4.     I have attended over 1,000 hours of training in various aspects of criminal investigation as well as attending and instructing classes and seminars dealing specifically with money laundering, international tax and money laundering, seizure, forfeiture, various financial investigative techniques, advanced interviewing and related financial and narcotic investigations. I also have a Bachelor's of Science Degree in Accounting from Arizona State University.

5.     I make this affidavit, in part, on personal knowledge derived from my participation in this investigation and in part upon information and belief developed by other agents/detectives and financial analysts involved in this investigation. The sources of my information and belief are: Oral and written reports about this and other related investigations which I have received, directly or indirectly, from various law enforcement entities, subpoenaed bank records and other financial documents, physical surveillance conducted by other law enforcement personnel, which have been reported to me either directly or indirectly, and search warrant evidence.

6.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, U.S.C. §§ 841(a)(1) and 846, conspiracy and manufacture of controlled substances (marijuana), and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h), money laundering, have been committed by Heidi PHONG, and other known and unknown persons. In addition, I believe that there is probable cause to believe that Heidi PHONG and her employees, along with known and unknown persons, are committing violations of Title 18, U.S.C. §§ 1341 and 1343, wire and mail fraud, in relation to real estate transactions and refinancings related to the marijuana grows. There is probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

2

## JURISDICTION

8.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND AND PROBABLE CAUSE

9.     Heidi PHONG is a licensed real estate salesperson and broker (license ID #01880534, issued September 2, 2010). The information in this affidavit will show that through her multiple real estate businesses, including HP REAL ESTATE and SKYE INVESTMENT, LLC, Heidi PHONG, along with some of her employees, including Sandie ZHONG and Jenny CHU, facilitated the purchase of several homes in the Sacramento, California area that were used as indoor marijuana grow houses in violation of Title 21, U.S.C. §§ 841 and 846, and to finance or promote the illegal grows in violation of Title 18, U.S.C. §§ 1956(a) and (h). The information will further show that probable cause exists to believe that Heidi PHONG continues to facilitate the acquisition and disposal of homes used as indoor marijuana grows, in violation of Title 21, U.S.C. §§ 841 and 846 and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h). The evidence establishes probable cause to believe that evidence of Heidi PHONG's knowledge, intent, motives, and modus operendi regarding the indoor marijuana grows will be found in the email accounts used to commit these offenses. In addition, the evidence establishes probable cause to believe that Heidi PHONG and others used these email accounts to hide or prevent discovery of the marijuana grow operations by the lenders and/or the refinancing lenders in violation of Title 18, U.S.C. §§ 1341 and 1343.


## PRIOR SEARCH WARRANTS

3

10. On July 17, 2017, the Honorable U.S. Magistrate Judge Carolyn K. Delaney issued a federal search warrant (2:17-SW-0632-CKD) for Gmail accounts associated with Heidi PHONG (heidiphong@gmail.com and tchpteam@gmail.com). The pertinent results from the return of the email search warrant are summarized in later sections of this affidavit.

11. On March 29, 2018, the Honorable U.S. Magistrate Judge Edmund F. Brennan approved a federal search warrant (2:18-SW-0310-EFB) for Heidi PHONG's business, HP REAL ESTATE which has offices located at 5648 Belleview Avenue, Sacramento, CA and 9105 Bruceville Road, Elk Grove, CA. During the execution of those search warrants on April 5, 2018, agents obtained a roll over federal search warrant (2:18-SW-0325-AC) for Heidi PHONG's residence located at 5725 Aspen Grove Lane, Elk Grove, CA. The pertinent results from the search warrants are summarized in later sections of this affidavit.

## BACKGROUND OF INVESTIGATION

12. In August 2014, the Drug Enforcement Administration (DEA) Sacramento District Office and the Elk Grove Police Department (EGPD) initiated a federal investigation of a criminal organization that was believed to be responsible for the cultivation and distribution of marijuana on a large scale (here after referred to as "The Organization"). The Organization was believed to be purchasing homes in the Sacramento region using money from China, converting these residences into indoor marijuana cultivation sites, and then trafficking the processed marijuana to other parts of the country, particularly the Eastern United States. As part of this investigation, on September 14, 2016, the DEA, IRS-CI, EGPD and the Sacramento County Sheriff's Department (SCSD) executed seven federal search warrants on residences associated with this indoor marijuana growing operation, and arrested Leonard YANG and several other individuals pursuant to Title 21 federal drug violations. In total, agents seized approximately 5,496 marijuana plants from the seven residences that were all converted into full-scale indoor marijuana grows.

4

Heidi PHONG and her real estate business, HP REAL ESTATE, facilitated the purchase of 6 of the 7 marijuana grows searched that day.

13.     At approximately the same time as the Sacramento DEA drug trafficking investigation began, IRS-CI opened a parallel financial investigation into how the residences used for cultivation were financed and purchased. Both the DEA drug trafficking and the IRS-CI financial investigation have continued to date.

14.     During the continuing investigation, it was learned that Xiu Ping LI, an investor in Leonard YANG's marijuana growing operation, had also purchased several homes herself, either in her name or in the names of several of her relatives. It was further learned that individuals who had provided funds for some of the homes bought by Xiu Ping LI had also purchased additional homes to grow marijuana. On July 26, 2017, federal search warrants were executed at nine residences in the Sacramento and Roseville, CA areas, and approximately 7,750 marijuana plants were found and seized. Xiu Ping LI, among several other individuals, were arrested and charged with federal controlled substance and money laundering violations.

15.     One of the properties searched that day was located at 7810 Elsie Avenue, Sacramento, CA, purchased by Xiu Ping LI on or about January 14, 2016. Bank records show that the property was purchased with funds from China, and the mortgage loan was funded through a hard money lender, FJM Private Mortgage Fund, LLC. Escrow records show that Heidi PHONG was Xiu Ping LI's realtor, and earned a commission of $9,750. In addition, SKYE INVESTMENT, LLC, another Heidi PHONG entity, received $329 as a "Transaction Coordination Fee". I have reviewed the emails associated with this purchase that confirmed Heidi PHONG's involvement in the transaction. Furthermore, Heidi PHONG used her email account heidiphong@gmail.com as her contact email. The escrow records also showed use of the more general email tchpteam@gmail.com to facilitate the transaction.

16.     This warrant is part of a federal investigation by FBI, DEA, DHS-HSI, and the IRS-CI into indoor marijuana cultivation in Northern California. As this

5

investigation has developed, agents have observed a number of common links between properties being used as indoor marijuana grows and suspected to be part of The Organization's operations or related individuals' and groups' criminal conduct. These links include: down payments financed by wires from China; the use of one of a handful of common realtors, in this case Heidi PHONG; the involvement of hard money lenders in purchasing the homes; and the structure and terms of the purchase itself. In turn, the homes often possessed other common characteristics after being purchased, such as high power usage, and association with certain individuals that marked them as marijuana grow houses rather than primarily residences.

17.     In April of 2018, FBI, DEA, DHS-HSI and IRS-CI executed a large joint task-force search and seizure operation on approximately 100 residences and businesses in the Sacramento, CA area. During that operation approximately 38,212 marijuana plants were found and seized, along with over 100kg of processed marijuana, 15 guns and over $100,000 in currency. Currently, the investigation has identified in excess of one hundred homes in the Sacramento, CA region that share some or all of the links that tied previously-searched homes to The Organization and to marijuana cultivation in residential neighborhoods.

18.     This affidavit seeks a search warrant for Heidi PHONG's emails and information stored by GOOGLE, from July 2017, which is the last date of the previous search warrant, through the present. Heidi PHONG and or her business, HP REAL ESTATE, is the listed real estate agent on over 50% of the properties that were searched in April 2018 and confirmed to be indoor marijuana grows. I believe that there is probable cause to believe that there is evidence that she and/or her employees had knowledge that they were facilitating the purchase of several target properties that were involved in a large-scale common criminal enterprise for marijuana cultivation. Through my training and experience, I know that emails and other electronic data are often kept for many years after transactions, that businesses often have policies put in place to ensure data retention. During my investigation of this case, I have found that Heidi PHONG utilized Google services,

6

including her Gmail account (heidiphong@gmail.com) to communicate with her employees, other real estate professionals and clients. Heidi PHONG's employees, including Belle BALOLONG, use tchpteam@gmail.com and bellehpteam@gmail.com to facilitate the purchase, refinance, and sale of marijuana grow houses, and receive and execute Heidi PHONG's instructions relating to these transactions.

## SEARCH WARRANT EVIDENCE

### 2017 YUBA COUNTY INVESTIGATION

19.     In June 2017, while federal agents were investigating the Xiu Ping LI, part of The Organization, they learned of an investigation conducted by the Yuba County Sheriff's Department earlier in 2017 (hereinafter referred to as the "2017 Yuba County Investigation"). In January 2017, Yuba County law enforcement officials began investigating a large-scale marijuana cultivation and trafficking organization operating in Northern California, specifically, in the Marysville, Sacramento, and Wilton, CA areas. In March 2017, law enforcement officials executed search warrants at nine houses in these areas, arrested an individual identified as Zhen Shang LIN, among others, and seized approximately 6,493 marijuana plants. On July 6, 2017, based on surveillance conducted during the Xiu Ping LI investigation, it was determined that the organized marijuana grow activity in residential areas identified in the 2017 Yuba County Investigation was directly linked to the federal Xiu Ping LI investigation by the presence of a vehicle registered to Zhen Shang LIN at one of the grow houses later searched by agents on July 26, 2017.

20.     During the 2017 Yuba County Investigation, a home located at 9700 Clay Station Road, Wilton, CA, owned by Zhen Shang LIN, was searched. Pursuant to the search, officers found approximately 832 marijuana plants. Escrow documents for the purchase of this residence, as well as emails reviewed pursuant to the Heidi PHONG Gmail search warrant revealed that Heidi PHONG, working under Davis Berk Realty at the time, was the agent who represented LIN in the purchase of the property. Furthermore, the escrow records reflected that SKYE INVESTMENT, LLC, another Heidi PHONG entity, provided $99,708.28 to LIN for

7

the purchase of the property. Title records reflect that although Stewart Title was handling the sale/purchase of the property, on November 10, 2015, SKYE INVESTMENT, LLC filed a Deed of Trust on the property for $105,000 with Orange Coast Title. Heidi PHONG's Gmail records indicate that this was a short term loan that LIN repaid SKYE INVESTMENT, LLC with a combination of a wire transfer, cash, and other negotiable instruments. Additional emails from the GOOGLE Inc., search warrant revealed that after the search warrant was executed at 9700 Clay Station Road in March 2017, Zhen Shang LIN sold the property, and Heidi PHONG represented him in the sale.

21.    In March of 2017, a search warrant was conducted at two other properties connected with the 2017 Yuba County Investigation associated with Zhen Shang LIN included 7709 South Parkway, Sacramento, CA (where approximately 450 marijuana plants were found) and 5656 Shires Way, Marysville, CA (where approximately 449 marijuana plants, a Del-Ton .223 AR rifle and ammunition, as well as a Beretta .380 caliber pistol were found). Moreover, Zhen Shang LIN and his wife, Li Juan WANG were found inside of 5656 Shires Way.

22.    Pursuant to the GOOGLE Inc., Gmail search warrant, agents found an email, dated April 6, 2017, from Heidi PHONG to "Tasks – HP Real Estate" which appears to be monitored by Heidi PHONG's employees, especially her assistant, Belle BALOLONG. The email, entitled "Urgent – need rental agreement – do not put my name on anything" directed BALOLONG to prepare two rental agreements for the homes located at 7709 South Parkway, Sacramento, CA and 5656 Shires Way, Marysville, CA. The email further contained WeChat screenshots, entitled "5700 kirkhill dr & 77...", reflecting a conversation between Heidi PHONG and Li Juan WANG, which discussed the terms of the purported rental agreements. Heidi PHONG also asked, Li Juan WANG "Do it for Kirk hill also [?]", to which Li Juan WANG responded "no kirkhill is good". From open source information, this property is further identified as 5700 Kirkhill Drive, Linda, CA. According to a Yuba County Sheriff's Detective, law enforcement did not execute a search warrant on 5700 Kirkhill Drive as they were not aware of its involvement in their

8

investigation at the time. This property was purchased on or about January 31, 2017 by LI L. LIN, who is believed to be the same individual who purchased 7709 South Parkway, Sacramento, CA. This property was listed for sale less than three months later on April 22, 2017 (after the search warrants executed by Yuba County) and was eventually sold on August 2, 2017. The listing agent was Heidi PHONG.

23. Based on the texts and the associated emails, and the fact that several false leases were seized as evidence during prior search warrants relating to this investigation, it is my belief that Li Juan WANG was fearful that the properties located at 7709 South Parkway and 5656 Shires Way would be seized by law enforcement for facilitating marijuana cultivation, so she asked Heidi PHONG to create false rental agreements to allow the titled owner to profess an "innocent owner" defense to seizure and forfeiture of the properties. Further emails from the Gmail search warrant indicate that Heidi PHONG was the listing agent for both 7709 South Parkway and 5656 Shires Way when they were listed for sale in the summer of 2017.

### DANIEL ZHU EMAILs

24. In April 2018, approximately 100 search warrants were executed on suspected marijuana grow houses, including three properties owned by Daniel ZHU located at 7627 Masters Street, in Elk Grove, and 19460 Fiddletown Road and 16481 Fiddletown Road, both in Fiddletown, California. Agents seized a total of approximately 1,346 marijuana plants and approximately 19,871 grams of processed marijuana from these three properties.

25. The investigation showed that Daniel ZHU purchased all three properties, and converted them into marijuana grow operations in violation of Title 21 U.S.C. §§ 841(a)(1), 843 and 846. He purchased the first property located at 7627 Masters Street in May of 2014, and Heidi PHONG was the selling agent representing the owner of the property. However, following that transaction Heidi PHONG and HP REAL ESTATE represented Daniel ZHU for the next two property purchases, both in Fiddletown, California.

9

26.     For the property located at 19460 Fiddletown Road, Heidi PHONG was the buyer's agent and earned $6,155.00 from the sale. I have reviewed email messages sent to and from Heidi PHONG at (heidiphong@gmail.com) related to this property, confirming her involvement in the transaction. Emails also confirmed her continued involvement long after the purchase of the property. From Heidi PHONG's cell phone obtained through a search warrant there was a saved email dated April 4th, 2018, (a day after the search warrants) Heidi PHONG (heidiphong@gmail.com) sent an email to Belle BALOLONG (bellehpteam@gmail.com) with the following subject line, *"Urgent (next few hours) – Daniel zhu properties- send me the lease agreements we have on file and cc Kelly".* To which Belle BALOLONG, responded, "COMPLETED" and "Please see attached." Heidi PHONG replied, "Client will come pick up". I am unable to review the referenced attachments, because the email was found on the Heidi PHONG's phone on April 5th, 2018, subsequent to the search warrant return (July 2017) from the initial GOOGLE Inc., search warrant.

27.     On that same day, April 4th, 2018, Heidi PHONG (heidiphong@gmail.com) sent another email to Frank V. Estipona with PB Financial Group Corp., a hard money lender in Los Angeles, CA, with the subject line, *"Can we update mailing address for Daniel zhu".* The body of the email states, "2 fiddletown properties-" and "63 Old Landing Way apt D Charlestown, Boston, MA".

28.     There is no evidence to suggest that Heidi PHONG is a property manager for Daniel ZHU, however it seems that she has control of the "lease agreements" for the two Fiddletown properties owned by Daniel ZHU. It also appears that she is "updating" Daniel ZHU's address to make it appear that he is just an out-of-state owner of the properties and not involved in the marijuana growing operation. However, the day of the search warrant, April 3rd, 2018, a 2004 Honda Odyssey registered to Daniel ZHU was found at the 19460 Fiddletown Road property and on January 31, 2018 that same vehicle was observed at 7627 Masters Street during surveillance.

**FJM REFINANCING 2017**

29.     Based on records and information obtained from FJM Mortgage Fund, LLC, (FJM) a hard money lender, I have learned that in the spring of 2017, FJM began sending their borrowers a request to inspect the property used as collateral for their loans. The inspection requests were prompted by prior law enforcement actions including the service of search warrants where marijuana grows were discovered on a number of their financed homes. According to FJM, if the property owner denied an inspection, FJM would file a notice of default on the property because FJM had a right of inspection, and FJM considered growing marijuana illegally a breach of the mortgage contract. It is my belief that the letters from FJM caused several of their borrowers to contact Heidi PHONG seeking assistance with refinancing the mortgages for their properties. Email communications obtained from the federal search warrant served on GOOGLE Inc., included emails discussing the refinancing of those properties.

30.     For example, on July 13, 2017, Belle BALOLONG at bellehpteam@gmail.com , Heidi PHONG's office assistant, sent an email to Tina Nguyen of WPA Lending with a subject of "New Loan Submissions" and copied Heidi PHONG at heidiphong@gmail.com. The email included an attachment entitled "WPA Loan Sheet.xlsx" that listed thirty-one residential properties that Heidi PHONG's brokerage was seeking to refinance on behalf of their clients. Of the thirty-one properties, twenty-six were homes that had been financed by FJM. Additionally, of the twenty-six FJM financed properties, at least ten were confirmed to be residential indoor marijuana grows or had evidence of marijuana activity based on law enforcement actions conducted on the properties.

31.     As an example, the property located at 7625 Meadowstone Drive, Sacramento, California was listed on the "WPA Loan Sheet.xlsx." The purchase of 7625 Meadowstone Drive was financed by FJM in January 2016. With PHONG's assistance, 7625 Meadowstone was refinanced by another hard money lender in September 2017. I have reviewed emails found in the targets email account, heidiphong@gmail.com, where PHONG and her employees discussed and

11

coordinated the refinance of the property with the escrow and loan companies. Because the emails obtained from the federal search warrant on GOOGLE Inc., for Heidi PHONG'S email accounts ended in July 2017 and the refinance of the property finalized in September 2017, I believe there are additional email communications contained in Heidi PHONG's email account discussing the refinance of the property. On April 3, 2018, DEA Sacramento executed a federal search warrant at 7625 Meadowstone Drive and seized approximately 181 marijuana plants.

32.    Additionally, the "WPA Loan Sheet.xlsx" included a property located at 13701 Indio Drive, Sloughhouse, California. The purchase of 13701 Indio Drive was financed by FJM in or about March 2016. In December 2017, 13701 Indio Drive was refinanced by another hard money lender. I have reviewed emails found in the Heidi PHONG's email account were Heidi PHONG and her employees discussed and coordinated the refinance of the property with the escrow and loan companies. Because the emails obtained from the GOOGLE Inc., search warrant on Heidi PHONG'S email accounts ended in July 2017 and the refinance of the property finalized in December 2017, I believe there are additional email communications contained in Heidi PHONG's email account discussing the refinance of the property. On April 3, 2018, law enforcement agents executed federal search warrants at 13701 Indio Drive and seized approximately 357 marijuana plants. An investigation into the ownership of 13701 Indio Drive identified Jenny CHU as the owner. CHU has also been identified as a realtor employed at Heidi PHONG's brokerage.

33.    Furthermore, the" WPA Loan Sheet.xlsx" also included a property located at 7627 Masters Street, Elk Grove, California. Although 7627 Masters Street was not a property financed by FJM, Heidi PHONG assisted the owner, Daniel ZHU, with refinancing the property with another hard money lender in August 2017. I have reviewed email communications from Heidi PHONG's email account, where Heidi PHONG and her employees discussed and coordinated the refinancing of the property. On April 3, 2018 law enforcement officers executed a

12

federal search warrant at 7627 Masters Street and seized approximately 524 marijuana plants.

34.    Copies of the WPA Loan Sheet spreadsheet, dated July 13, 2017, and July 14, 2017, were found in the tchpteam@gmail.com Google Drive. A closed loans database, dated June 12, 2017, and containing entries for 7810 Elsie Ave, 13701 Indio Drive, and 7709 South Parkway, among others, was also located in the tchpteam@gmail.com account. A "HP Updates Tracker" spreadsheet dated June 9, 2017, included a to do list of things to do, with entries on June 9, 2017 stating "All refinance 2 years 9.5," an apparent reference to re-financing loans for a 2-year term at 9.5% interest, and "liming or one of us can write void on the check picture is okay" was also found in the tchpteam@gmail.com account.

## CURRENT LISTINGS

### 2101 Bradburn Drive, Sacramento, CA

35.    QinZhi Lin purchased the property located at 2101 Bradburn Drive in Sacramento, CA, for $349,500 on or about July 18, 2016. After the down payment the balance of the purchase ($209,640) was funded by FJM.

36.    Heidi PHONG's brokerage represented QinZhi Lin, the buyer of the property. Law enforcement investigators have reviewed several email messages sent to and from Heidi PHONG at heidiphong@gmail.com related to this property, confirming her involvement in the transaction. In addition, there are email messages both to and from tchpteam@gmail.com discussing this property transaction.

37.    *Power Usage.* Power records from SMUD establish that this home was likely being used as a marijuana grow facility. The power records identified QinZhi Lin is the current subscriber to electrical service at this property and has been since the property was purchased on or about July 18, 2016. For the eight month period prior to the home being purchased for suspected marijuana cultivation, the home averaged approximately 562 KWH per month. In 2017 under subscriber QinZhi Lin, the power use was approximately 6,299 KWH per month, which is consistent

13

with marijuana cultivation. The following monthly figures for the last five months of 2016, all of 2017 and part of 2018 show a significant and sustained use of electricity, further consistent with indoor marijuana cultivation:

    a.   Aug-16:     3,705 KWH
    b.   Sep-16:     8,815 KWH
    c.   Oct-16:     8,664 KWH
    d.   Nov-16:    8,797 KWH
    e.   Dec-16:    9,366 KWH
    f.   Jan-17:     9,388 KWH
    g.   Feb-17:     9,735 KWH
    h.   Mar-17:   10,305 KWH
    i.   Apr-17:   10,684 KWH
    j.   May-17:    8,605 KWH
    k.   Jun-17:     8,456 KWH
    l.   Jul-17:     8,603 KWH
    m.   Aug-17:    1,853 KWH
    n.   Sep-17:      240 KWH
    o.   Oct-17:     1,277 KWH
    p.   Nov-17:    3,256 KWH
    q.   Dec-17:    3,189 KWH
    r.   Jan-18:     4,090 KWH
    s.   Feb-18:     6,617 KWH
    t.   Mar-18:    5,980 KWH
    u.   Apr-18:    5,439 KWH
    v.   May-18:    4,825 KWH
    w.   Jun-18:    6,149 KWH
    x.   Jul-18:     6,500 KWH
    y.   Aug-18:    3,704 KWH

38.    *Currently Listed for Sale.* According to Metrolist as of November 16, 2018 this property is currently listed for sale and the representing realtor is Heidi PHONG. Based on the current listing data, I believe that Heidi PHONG is still in communication with people involved in the cultivation of marijuana.

39.    *Payment of Electricity.* In combination with the significantly higher electricity usage, the method of payment for this usage was similar to that found in the earlier investigations of confirmed marijuana grows described above. SMUD records reflected that the payments made on the electric bills for this property were

most frequently made through pay stations (such as those found at Raley's or similar locations), which is consistent with other homes where investigators have found marijuana growing.

3720 Andros Way , Sacramento, CA

40.     Chun Yu Yang, from Brooklyn NY, purchased the property located at 3720 Andros Way in Sacramento, CA, for $130,000.00 on or about January 8, 2016. After the down payment the balance of the purchase ($78,000) was funded by FJM.

41.     Heidi PHONG's brokerage represented Chun Yu Yang, the buyer of the property. Law enforcement investigators have reviewed several email messages sent to and from Heidi PHONG at heidiphong@gmail.com related to this property, confirming her involvement in the transaction. In addition, there are email messages both to and from tchpteam@gmail.com discussing this property transaction.

42.     *Power Usage.* Power records from SMUD establish that this home was likely being used as a marijuana grow facility. The power records identified Zhoujin Yang is the current subscriber to electrical service at this property and has been since the property was purchased on or about January 8, 2016. Similar to the Bradburn property, 3720 Andros way exhibited extremely high power usage consistent with an indoor marijuana grow. In 2017 under subscriber Zhoujin Yang, the power use was approximately 8,386 KWH per month, which is consistent with marijuana cultivation. The following monthly figures for the last two months of 2016, all of 2017 and part of 2018 show a significant and sustained use of electricity, further consistent with indoor marijuana cultivation:

| a. | Nov-16: | 501 KWH |
| b. | Dec-16: | 7,843 KWH |
| c. | Jan-17: | 12,331 KWH |
| d. | Feb-17: | 6,131 KWH |
| e. | Mar-17: | 8,241 KWH |
| f. | Apr-17: | 9,736 KWH |
| g. | May-17: | 6,009 KWH |
| h. | Jun-17: | 8,564 KWH |

15

| | | |
|---|---|---|
| i. | Jul-17: | 4,575 KWH |
| j. | Aug-17: | 6,305 KWH |
| k. | Sep-17: | 8,940 KWH |
| l. | Oct-17: | 8,597 KWH |
| m. | Nov-17: | 10,900 KWH |
| n. | Dec-17: | 10,433 KWH |
| o. | Jan-18: | 9,455 KWH |
| p. | Feb-18: | 8,559 KWH |
| q. | Mar-18: | 9,117 KWH |
| r. | Apr-18: | 3,344 KWH |

43.     *Currently Listed for Sale.* According to Metrolist as of November 16, 2018 this property is currently listed for sale and the representing realtor is Heidi PHONG.  Based on the current listing data, I believe that Heidi PHONG is still in communication with people involved in the cultivation of marijuana.

44.     *Payment of Electricity.* In combination with the significantly higher electricity usage, the method of payment for this usage was similar to that found in the earlier investigations of confirmed marijuana grows described above.  SMUD records reflected that the payments made on the electric bills for this property were most frequently made through pay stations (such as those found at Raley's or similar locations), which is consistent with other homes where investigators have found marijuana growing.

45.     A preservation letter was sent to GOOGLE Inc. on April 5th, 2018 and a follow-up one was sent on November 1, 2018.  In general, an email that is sent to a GOOGLE Inc. subscriber is stored in the subscriber's "mail box" on GOOGLE Inc. servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on GOOGLE Inc. servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on GOOGLE Inc.'s servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

46.     In my training and experience, I have learned that GOOGLE Inc. provides a variety of on-line services, including electronic mail ("email") access, to

the public. GOOGLE Inc. allows subscribers to obtain email accounts at the domain name gmail.com, like the email account[s] listed in Attachment A. Subscribers obtain an account by registering with GOOGLE Inc. During the registration process, GOOGLE Inc. asks subscribers to provide basic personal information. Therefore, the computers of GOOGLE Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for GOOGLE Inc. subscribers) and information concerning subscribers and their use of GOOGLE Inc. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

47.     A GOOGLE Inc. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by GOOGLE Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

48.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

49.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created,

17

the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

50.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

51.     This application seeks a warrant to search all responsive records and information under the control of GOOGLE Inc., a provider subject to the jurisdiction of this court, regardless of where GOOGLE Inc. has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within GOOGLE Inc.'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

52.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States

18

to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

53.      Based on the forgoing, I believe that probable cause exists to believe that Heidi PHONG and her employees are using and have used heidiphong@gmail.com, bellehpteam@gmail.com, and tchpteam@gmail.com to commit violations of 18 U.S.C. § 1956, money laundering, and 21 U.S.C. §§ 841 and 846, manufacturing, distributing, or possession for sale of marijuana and conspiracy to manufacture, distribute, or possess marijuana for sale. In addition, I believe that

19

probable cause exists to believe that Heidi PHONG and her employees have been using and have used these email accounts to conceal the violations of 18 U.S.C. § 1956, money laundering, and 21 U.S.C. §§ 841 and 846, and possibly defraud lenders by concealing the use of secured property for marijuana grows in violation of 18 U.S.C. §§ 1341 and 1343. Therefore, I request that the Court issue the proposed search warrant. Because the warrant will be served on GOOGLE Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

54.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or

*Remainder of page intentionally left blank*

tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Lisa S. Ulrikson
Special Agent
IRS – Criminal Investigation

Subscribed and sworn to before me on December 17, 2018

Honorable Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

Approved as to Form:

Roger Yang
Assistant United States Attorney

## ATTACHMENT A-1

### Property to Be Searched

This warrant applies to information associated with **heidiphong@gmail.com** that is stored at premises owned, maintained, controlled, or operated by **GOOGLE Inc.**, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT A-2

## Property to Be Searched

This warrant applies to information associated with **tchpteam@gmail.com** that is stored at premises owned, maintained, controlled, or operated by **GOOGLE Inc.**, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT A-3

### Property to Be Searched

This warrant applies to information associated with bellehpteam@gmail.com that is stored at premises owned, maintained, controlled, or operated by **GOOGLE Inc.**, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### I. Particular Things to be Seized

To the extent that the information described in Attachments A-1 to A-2 for the time period of July 1, 2017 to the date of service of the search warrant is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on November 1, 2018, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachments A-1 to A-2:

1.      The contents of all emails associated with the email account(s), including stored or preserved copies of emails sent to and from the account, draft emails, read email, saved email, deleted email, unopened email, junk email, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email.

2.      All information that identifies in any way subscribers to the email accounts including names, addresses, telephone numbers and other identifiers, email addresses, business information, the length of service (including start date), means and source of payment for services (including any credit card or bank account number), records of the Internet Protocol address ("IP address") used to register the account, IP addresses associated with particular logins to the account, and information about any domain name registration.

3. All records pertaining to the types of service utilized by the email account subscriber. To include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), password and password/security reminder questions and answers, other log files that reflect usage of the account, and any information to identify which computers or other devices were used to access the email account.

4. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures and image files, data files, and other such correspondence.

5. All records pertaining to communications between the provider and any person regarding the account, including contacts with support services, records of actions taken, and direct or indirect communications about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence, fruits, instrumentalities of violations of 18 U.S.C. § 1956 or 21 U.S.C. §§ 841 and 846, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

>    (a) The manufacture, distribution, or possession for sale of marijuana, or money laundering, or conspiracy to manufacture, distribute, or possess marijuana, or conspiracy to commit money laundering;
>
>    (b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;
>
>    (c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;
>
>    (d) Evidence and information concerning the receipt, distribution, laundering, or transfer of fruits, or instrumentalities of the manufacture, distribution, or possession for sale of marijuana or money laundering;
>
>    (e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## BUSINESS RECORDS PURSUANT TO FEDERAL
## RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GOOGLE Inc., and my official title is _____. I am a custodian of records for GOOGLE Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GOOGLE Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.     such records were kept in the ordinary course of a regularly conducted business activity of GOOGLE Inc.; and

c.     such records were made by GOOGLE Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____

Date                              Signature

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**SEALED**

| In the Matter of the Search of | ) | |
|---|---|---|
| Information associated with emails: heidiphong@gmail.com; tchpteam@gmail.com; and bellehpteam@gmail com that are stored at the premises owned, maintained, controlled or operated by GOOGLE, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043 | ) ) ) ) ) ) | Case No. 2:18-SW-1189 KJN |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A-1 to A-3, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ___Dec 31, 2018___ *(not to exceed 14 days)*
  ☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

  ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: ___Dec 17, 2018___    2:40pm
_____
*Judge's signature*

City and state:     Sacramento, California
_____
Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge

_____
Date